# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                    Criminal Action No. 5:17-CR-4

CHRISTOPHER L. PARK,

    Defendant.

## REPORT AND RECOMMENDATION

**I.    SUMMARY**

The Defendant, Christopher Park, was severely injured when he was hit in the head with a glass bottle while in his home. Emergency personnel, including the fire department and state and federal law enforcement, responded to the scene. The police performed a protective sweep of the upstairs and basement. The Defendant challenges the Constitutionality of this protective sweep. The Court is unpersuaded by this argument because the law is clear that the police can perform this type of search for officer safety. Moreover, there is no evidence that this protective sweep uncovered any evidence thus, there is nothing to suppress.

The officers obtained a search warrant based on marijuana mixed with broken glass in plain view in the kitchen where the Defendant lay injured. The Defendant argues that the officers planted the marijuana as a means to establish probable cause for the search. The Defendant points to a few threads of evidence that support this theory, primarily relying on the testimony from his friend, Darius Savage. The Court finds that is no evidence establishing that the police placed the marijuana on the floor. Thus, the Court is unpersuaded by this argument

Furthermore, the Defendant argues that his statements to the police should be suppressed. The Defendant has presented no evidence of the circumstances of any statements nor has he

identified any statements. Moreover, the Defendant has not made any argument as to why the statements should be suppressed. Thus, the Court is unpersuaded by the mere assertion that his statements should be suppressed.

## II.   BACKGROUND

### A.   Procedural History

The Defendant filed a plethora of motions including a Motion to Suppress. ECF No. 29. The Court held a hearing on March 27, 2017. The Defendant called several witnesses, however, he indicated that he had additional witnesses to call who were not subpoenaed. Therefore, the Court continued the hearing until April 11, 2017. At the close of the evidentiary portion of the hearing, the Defendant indicated that he preferred to file a supplemental brief based on the testimony rather than present argument. Thus, the Court concluded the hearing without hearing argument from counsel. The Defendant filed his supplemental brief on April 21, 2017. ECF No. 44. The supplemental brief raised a new theory not presented at the hearings. Therefore, the Court granted the Government time to respond. The Government responded on May 1, 2017. Thus, the issue is ripe for a decision.

### B.   Findings of Fact

In the early morning hours of January 19, 2017, the Defendant engaged in an altercation in his home with his roommate at that time, Rico Redmond. The altercation occurred in the kitchen and ended when Mr. Redmond struck the Defendant in the back of head with a half-gallon, glass liquor bottle. The Defendant fell to the kitchen floor and lay bleeding from his head.

Darius Savage testified that he had recently lost his apartment and the Defendant was allowing him to live at the Defendant's home. Mr. Savage was not at the house during the

altercation. However, he returned to the house, heard the Defendant fall to the ground, and knocked the liquor bottle from Mr. Redmond's hand shattering it on the floor. At that point, Mr. Redmond fled the scene.

Mr. Savage called 9-1-1 for medical help for the Defendant. Despite knocking the bottle from Mr. Redmond's hand, Mr. Savage told the 9-1-1 operator that he did not know what happened. Mr. Savage testified that another individual, Corey Henry, put a sheet on the Defendant's head to soak up the blood. Meanwhile, Mr. Savage stated that he swept up all of the glass from the liquor bottle and put it into the trashcan so that the emergency responders would not be hurt. The Court accords no weight to the testimony that Mr. Savage swept up the glass. Indeed, the Court has difficulty believing that Mr. Savage would sweep up the glass while the Defendant, his friend, lay severely injured and bleeding only a few feet away. Moreover, the police photographs clearly show glass on the floor.

Emergency personnel arrived at the home. First, on the scene were the Wheeling Fire Department paramedics. The paramedics attended to the Defendant in the kitchen. Next on the scene were several Wheeling Police Department officers. The officers entered through the front door and walked through the living room to get to the kitchen. In the kitchen, the officers observed the broken glass which was also mixed with marijuana.[1] The officers performed a "protective sweep" of the upstairs and the basement to ensure that there were no additional individuals who could pose a threat. The officers stated that the protective sweep was very brief and that they were only searching for people. The officers discovered neither individuals nor evidence during the protective sweep of the upstairs and the basement.

The Defendant's across-the-street neighbor, Mellissa Welling, testified that she observed the scene from her home. She stated that there were emergency vehicles parked both ways on

---

[1] The marijuana found is not charged in the indictment and is unrelated to the firearm charge.

3

her one-way street. She indicated that she saw flashlights in the upstairs bedroom for "maybe like five minutes. Not long." The Defendant argues that the protective sweep was longer than five minutes thus, it was longer than a brief search for people and was actually a search for evidence. However, five minutes was merely an estimate and Ms. Welling further stated that the lights were upstairs for "not long." Moreover, an individual located in a residence across the street could not know what occurred in a particular room.

In the living room the officers observed "a lot of cell phones," security cameras, and "hollowed-out cigars or blunt paper." Officer Josh Sanders stated that he was aware that the area was known for drug activity. Based on this knowledge coupled with his observations, including observing the marijuana on the kitchen floor, Officer Sanders contacted the Ohio Valley Drug Task Force for further investigation. Ohio Valley Drug Task Force Officers Dave Black and Dan Holmes arrived on the scene. After observing the scene, Officers Black and Holmes left to apply for a search warrant.

The paramedics transported the Defendant to the hospital meanwhile, the officers obtained the search warrant and began conducting the search. Mr. Savage testified that at least seven police officers remained downstairs during the search. The search revealed the sub machinegun with a suppressor which forms the basis of the pending charges.

While the search was in progress, the Defendant returned from the hospital, still bleeding from his head. The officers offered to drive the Defendant back to the hospital, however, he refused. Apparently, at that time the Defendant made statements to the officers, however, there has been no evidence presented regarding the circumstances or content of those statements.

At some point, the police searched Mr. Savage's name and found an outstanding arrest warrant. The police arrested Mr. Savage and transported him to the police station. Mr. Savage

was released when they discovered that they arrested the wrong individual. Indeed, the arrest warrant identified a person with the same name yet substantially younger than Mr. Savage.

**III. DISCUSSION**

The Defendant's argument that the search should be suppressed is addressed in Part A and his argument that his statements should be suppressed is addressed in Part B.

**A.     Motions to Suppress the Search**

The Defendant filed a Motion to Suppress a search. ECF No. 29. That motion, however, did not allege why the search was illegal but rather requested a hearing. During both hearings regarding the motion, the substantial majority of the evidence elicited by the Defendant related to the protective sweep. At the close of the evidentiary portion of the hearing, rather than present argument, the Defendant requested an opportunity to submit a second brief. The Defendant's second brief raised a theory that was not presented at the hearing. ECF No. 44. The Defendant's second brief argues a conspiracy including that the police placed the broken glass and marijuana on the kitchen floor as a means to establish probable cause.

Part 1 addresses the protective sweep, which was the focus of the hearings. Part 2 addresses the Defendant's theory that the police planted the marijuana. Part 3 addresses probable cause. The Court is unpersuaded by each argument and **RECOMMENDS** that the Defendant's [ECF No. 29] Motion to Suppress a search be **DENIED** in its entirety and the Defendant's [ECF No. 44] Motion be **DENIED** as to the search.[2]

   *1.     The Protective Sweep*

The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures unless one of the delineated exceptions applies. One such exception is the

---

[2] The Defendant's ECF No. 44 argues that both the search and statements should be suppressed. These are separate issues therefore, the Court addresses them separately. However, the Court is unpersuaded by each theory and thus, recommends that ECF No. 44 be denied entirely.

protective sweep. "[A] protective sweep . . . [is] not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Maryland v. Buie*, 494 U.S. 325, 335 (1990). "[T]he searching officer [must] possesse[s] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Id.* at 327. (citations omitted) (quotations omitted).

Here, the officers arrived to a chaotic scene. The Defendant was severely injured after being hit by a bottle. There were at least two other individuals present. The Police were told the assailant, who had demonstrated his violent nature, was not present. Based on these facts, along with rational inferences, the Court finds that it was reasonable for the officers to believe that an individual who may pose a threat may have been in the house. Thus, the protective sweep did not violate the Fourth Amendment.

Moreover, the marijuana discovered in the living room was in plain view when the officers entered the premises and was not discovered during the protective sweep. And there was no testimony presented at the hearing that the protective sweep discovered any evidence. Thus, assuming *arguendo* that the protective sweep did violate the Fourth Amendment, there is no evidence to suppress.

    2.    *The Police Did Not Place the Glass and Marijuana on the Floor*

The Defendant argues that the police did not conduct a protective sweep but rather, a full warrantless search. He argues that during this alleged warrantless search, the police discovered a submachinegun with a suppressor. Therefore, the police, knowing that their search was illegal, needed to establish probable cause to obtain a search warrant. Once they obtained a search

warrant, they would search the upstairs and claim they found the submachinegun for the first time. Thus, the Defendant argues, the police planted marijuana on the kitchen floor as a means to establish probable cause. However, there is absolutely no evidence in the record to support the Defendant's theory.

The Defendant highlights inconsistencies in the timeframe which demonstrates a conspiracy. For example, he argues that Heather Kozik, a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agent testified that she generally arrives at work between 8:00 and 8:30 am. On January 19, 2017, she received a call on her way to work that they discovered a firearm at the Defendant's residence. However, the search did not begin until 8:20 am. Thus, the Defendant contends the officers found the weapon in a suspiciously quick manner because the search began at 8:20 and the call was made to Agent Kozik before she arrived at work at 8:30. The Court is unpersuaded by this argument. Agent Kozik's time frame is merely an estimate based on generalities and does not establish what time the call was actually made. Moreover, this timeframe is reconcilable. Indeed, an efficient search of a small home could have discovered the submachinegun quickly. The submachinegun would be clearly illegal to law enforcement personal thus, triggering an immediate call to ATF.

Moreover, the Defendant argues that Mellissa Welling observed flashlights in the upstairs bedroom at about 7:00 am for about five minutes. The Defendant argues that five minutes is more time than necessary to perform a protective sweep. The Court accords little weight to the amount of time Ms. Welling estimated that the officers were upstairs. Indeed, immediately after her five-minute estimate she stated that they were not there for long. Moreover, Ms. Welling was merely a curious observer from across the street. She was not inside the home and cannot speak to what actually occurred within those walls.

Furthermore, Mr. Savage testified that he swept up all of the broken glass. Thus, the Defendant argues that the police pulled the broken glass from the garbage can, placed it back on the floor, and then planted the marijuana. The Court, as the finder of fact, does not believe this testimony. Again, there is no evidence in the record to support this theory. The story, as told by the Defendant, involves multiple law enforcement officers from state and federal agencies conspiring to place broken glass and marijuana on the kitchen floor to establish probable cause in order to charge the Defendant with a violation of a gun law.

Moreover, Mr. Savage demonstrated a motive and a willingness to help the Defendant, his friend. Mr. Savage testified that he had lost his apartment and that the Defendant was allowing him to stay at his house. Moreover, Mr. Savage made the 9-1-1 call, however, he stated that he did not know what happened to the Defendant and that he merely found him injured. Yet, Mr. Savage testified that he knocked the bottle away from Mr. Redmond thus, Mr. Savage knew what had happened and thus, has demonstrated a willingness to reshape the facts.

Furthermore, the Court finds that the police officers were credible. The material portions of their recollections were consistent. They have little, if any, motive to plant evidence. And the incredible consequences of such an action would deter any rational person.

In weighing the evidence, the small inconsistencies that the Defendant focuses on do not tip the scale. Rather, the great weight of the evidence shows that the police did not place broken glass and marijuana on the floor.

   3.  *Probable Cause*

The Court is unpersuaded by the Defendant's argument that the police placed broken glass and marijuana on the kitchen floor to create probable cause. However, beyond this argument the Defendant does not challenge probable cause. In fact, neither party has submitted a

copy of the search warrant. Thus, it is impossible for this Court to review what evidence the issuing magistrate relied upon in issuing the warrant.

### B. Motions to Suppress Statements

The Court held two hearings regarding the Defendant's motions to suppress and the parties have submitted two rounds of briefs. However, the Defendant has presented no argument as to why the Court should suppress any statements. Indeed, the Defendant's first [ECF No. 16] motion to suppress statements is a one-page motion that merely concludes that the Court should suppress the Defendant's statements. Moreover, the Defendant's [ECF No. 44] Motion is styled as a motion to suppress evidence and statements, however, it only discusses suppression of physical evidence. Furthermore, there was no argument presented at either hearing regarding suppressing statements. Thus, the Court **RECOMMENDS** that the Defendant's ECF No. 16 be **DENIED** and ECF No. 44 be **DENIED** as to suppression of statements.

## IV. RECOMMENDATION

The Court is unpersuaded by the Defendant's arguments and **RECOMMENDS**:

1. The Defendant's [ECF No. 16] Motion to Suppress statements be **DENIED**.
2. The Defendant's [ECF No. 20] Motion to Suppress the search be **DENIED**.
3. The Defendant's [ECF No. 44] Motion to Suppress the search and statements be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: May 3, 2017              /s/ *James E. Seibert*

                                                        JAMES E. SEIBERT
                                                       U.S. MAGISTRATE JUDGE